UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

AMES ASSOCIATES,

                Plaintiff,

    - against -

ABS PARTNERS REAL ESTATE LLC, ABS
PARTNERS LLC, AB PARTNERS LLC,
ARNOLD SCHONFELD, THOMAS
KEEGAN, JOSEPH DEL VECCHIO, AL'S
BEST ELECTRIC CO., INC., and AL
ANSHELEWITZ,

                Defendants.

------------------------------------------x

06 Civ. 928 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/07

    Ames Associates brings this action against ABS Partners Real Estate LLC, ABS Partners LLC, AB Partners LLC, Joseph Del Vecchio, Arnold Schonfeld, Thomas Keegan, Al's Best Electric Co., Inc., and Al Anshelewitz. The complaint alleges RICO violations and makes claims under state law for breach of fiduciary duty, fraud, negligence, and breach of contract. Defendants move to dismiss the complaint under Fed. R. Civ. P. 9(b) and 12(b)(6).

    The motions are granted under Rule 12(b)(6) as to the RICO claims with those claims dismissed. The court declines to exercise jurisdiction over the state law claims.

## **The Complaint**

The following is a summary of the allegations in the complaint, the truth of which is assumed.

### The Parties

Ames is a partnership with its principal place of business in Washington, D.C. Ames owns property at 80 Fifth Avenue in New York City (the "Premises"). ABS Partners Real Estate, ABS Partners and AB Partners (collectively "ABS") are related companies that manage and/or own properties. Each of the companies was Ames's managing agent for the Premises at some point between April 2000 and October 2005. For the entire time that the Premises were managed by ABS, defendants Del Vecchio and Schonfeld were senior managing directors of ABS. The complaint states that Del Vecchio was also a "partner" of ABS during the relevant time period. It is unclear what this means, since all of the ABS companies are limited liability companies.

Defendant Keegan was employed both by Ames and ABS. Upon the recommendation of Del Vecchio and Schonfeld, Ames hired Keegan in April 2000 to oversee the superintendent and porters at the Premises and to help with the retention of contractors to perform repair and maintenance work at the Premises. At ABS, Keegan assisted Del Vecchio with the day-to-day operations of the Premises and was responsible for oversight at other properties managed and/or owned by ABS.

Defendant Al Anshelewitz is a principal of Al's Best Electric ("Al's Best"). ABS engaged Al's Best to perform electrical work in connection with various projects at the Premises.

## ABS Comes to Manage the Premises

Before April 2000, ABS entered into an arrangement with Murray Hill Properties, a company engaged in the business of managing real estate, whereby Murray Hill agreed that it would provide ABS with office space, stationery and the right to use the Murray Hill name. Then, Del Vecchio and Schonfeld approached Ames and induced Ames to transfer management of the Premises to Murray Hill. On or about April 18, 2000 Ames and Murray Hill entered into a Management Agreement with respect to the Premises. At some point, ABS assumed Murray Hill's obligations under that agreement.

Del Vecchio and Schonfeld had control over the day-to-day operations of the Premises on behalf of ABS. They made decisions regarding maintenance, repairs, and capital improvements, and collected the rent. Del Vecchio and Schonfeld also advised Ames concerning significant capital expenditures and had authority to direct, hire and terminate Ames's employees. Importantly, Del Vecchio and Schonfeld retained contractors to work at the premises, supervised and directed the work of the contractors and were responsible for reviewing the contractors' work to ensure that the work was performed satisfactorily.

Ames paid ABS management fees that consisted of a percentage of the rent roll from the Premises and brokerage fees from new rentals at the Premises, regardless of whether ABS was involved in procuring the new tenant.

### The Alleged Fraudulent Schemes

The complaint alleges a number of fraudulent schemes perpetrated by "the ABS Defendants." ABS Defendants is an appellation given collectively to ABS, Del Vecchio, Schonfeld, and Keegan. Between April 2000 and October 2005, the ABS Defendants are alleged to have engaged in seven fraudulent schemes whereby Ames was overcharged for various repair and renovation projects at the Premises.

The complaint lists these projects as the "Electrical Work Projects"; the "Third Floor Buildout Project"; the "Building Facade Project"; the "Sidewalk and Vault Project"; the "South Wall Repair Project"; the "Tenth Floor Buildout Project"; and the "Fourteenth Floor Buildout Project." Al's Best submitted proposals for, and performed work on, the Electrical Work Projects and the Fourteenth Floor Buildout Project.

Thirteen pages of the complaint are dedicated to the details of these projects. An exhaustive description of the projects is unnecessary. For purposes of this opinion, it is sufficient to note that Ames makes the following allegations with respect to some or all of the projects:

> (1) The ABS Defendants recommended that Ames hire contractors who quoted inflated prices relative to prices that could have been attained through competitive bidding.

(2) The ABS defendants did not advise Ames of problems with ongoing construction despite knowledge of such problems. The problems were that—e.g., plans for certain projects were never prepared, some items were improperly installed, some work that was performed was unnecessary, and some work did not meet regulatory requirements.

(3) The ABS defendants informed Ames that work was complete when it was not complete.

(4) The ABS Defendants caused Ames to make payments to the contractors for work that was performed by Ames employees.

(5) On at least one occasion, Al's Best submitted invoices that included work for which tenants had also been billed.

The complaint alleges that the ABS Defendants maintained a bank account into which all rent was paid and through which ABS paid the Premises' expenses, including the payment of management fees to ABS. ABS prepared monthly financial statements setting forth the income and expenses of the Premises and management fees paid to ABS. Ames alleges that the monthly statements contained misrepresentations regarding the amount owed to the contractors and the amount of fees earned by ABS. Significantly, Ames does not allege that ABS included higher numbers on the statements than the fees actually charged by the contractors or paid to ABS; rather, Ames claims that the statements were fraudulent because the contractors were not entitled to their charges as a result of their shoddy work, and that ABS was not entitled to its fees because it was not faithfully performing its obligations to Ames.

Finally, Ames alleges, upon information and belief, that the ABS Defendants, or some of them, were motivated to commit this fraud

because they either had affiliations or relationships with the contractors, or were receiving compensation from the contractors.

The complaint contains three RICO causes of action. The first two counts are substantive RICO claims, brought under 18 U.S.C. § 1962(c), and the third alleges a RICO conspiracy under 18 U.S.C. § 1962(d). The predicate racketeering acts alleged in the first two counts are, respectively, mail fraud and wire fraud. ABS, Del Vecchio, Schonfeld, Keegan, Al's Best and Al Anshelewitz are all accused of RICO violations.

## Discussion

The court has original jurisdiction over the RICO claims under 28 U.S.C. § 1331 because they raise a federal question. The court has potential supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367, if they form part of the same case or controversy. However, as described below, the court declines to exercise such supplemental jurisdiction over the state law claims because plaintiff's federal claims are dismissed. 28 U.S.C. § 1367(c)(3).

### Counts I and II: Substantive RICO Claims

Plaintiff's substantive RICO claims are brought under 18 U.S.C. § 1962(c).

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

> indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Thus, the statute makes a "person" liable for conducting the affairs of an "enterprise" through a pattern of racketeering activity.

A RICO enterprise may be a partnership, or a corporation, or any group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).

It is obvious that the RICO statute makes a distinction between the person liable and the enterprise. For example, a corporate entity may not be simultaneously the "person" and the "enterprise" who conducts the affairs of the enterprise through a pattern of racketeering activity. Bennett v. United States, 770 F.2d 308, 315 (2d. Cir. 1985). Moreover, the Second Circuit has held that a plaintiff may not circumvent this distinctness requirement by alleging an association-in-fact enterprise that merely consists of a corporation associated with its employees, where the corporation is also the RICO defendant. Riverwoods Chappaqua v. Marine Midland Bank, 30 F.3d 339 (2d. Cir. 1994).

In this case, the "persons" allegedly liable for the substantive RICO allegations are listed in the complaint as the ABS companies, Del Vecchio, Schonfeld, Keegan, Al's Best and Anshelewitz. The "enterprise" is defined as an association-in-fact enterprise—which plaintiff calls the "Murray Hill Enterprise"—consisting of the ABS companies, Del Vecchio, Schonfeld, Keegan and Murray Hill. Plaintiff attempts to differentiate the

RICO person from the RICO enterprise by adding Al's Best and Anshelewitz to the list of persons liable and Murray Hill to the enterprise. But, as will be explained, Al's Best and Anshelewitz are not properly pleaded as substantive RICO defendants and Murray Hill is not properly pleaded as part of the RICO enterprise. When these parties are taken off the respective lists, what remains is ABS, together with its employees, as both the RICO person liable and the enterprise.

As to Al's Best and Anshelewitz, plaintiff does not state a substantive RICO claim against them. The Supreme Court in Reeves v. Ernst & Young, 507 U.S. 170 (1993), provided an important gloss on the "conduct" element of a RICO claim. The Court held that to conduct or participate in the conduct of such enterprise's affairs under § 1962(c), one must participate in the operation or management of the enterprise itself, although this can include persons below the level of upper management. Id. at 185. There is not a single factual allegation in the complaint that allows even the slightest inference that Al's Best and Anshelewitz, who was connected with Al's Best, controlled or operated the Murray Hill Enterprise, or were employed in any way by such enterprise. Al's Best is alleged to have submitted proposals for work requested by the ABS defendants, performed poor and incomplete electrical work, and submitted several invoices to the ABS defendants for work that was also billed to tenants. Al's Best's relationship to the alleged enterprise was as a contractor hired by the ABS defendants to

perform work at the premises. As a matter of law that is insufficient to establish that Al's Best or Anshelewitz conducted or participated in the conduct of the affairs of the alleged enterprise.

Similarly, Murray Hill is not properly pleaded as part of the Murray Hill Enterprise. Plaintiff pleads the structure of the Murray Hill Enterprise as follows:

> (a) Keegan and Schonfeld were involved in the day-to-day operations of the Premises under the authority and control of Del Vecchio and the principals of the ABS Defendants;
> (b) Del Vecchio was a partner of ABS and directed and controlled Keegan and Schonfeld, and had overall direction and control of the Premises as a member of ABS, the partners of which had ultimate supervisory responsibility for the management of the Premises;
> (c) Keegan directed Ames's superintendent and porters and arranged for the hiring of ABS Contractors;
> (d) ABS entered into an arrangement with Murray Hill pursuant to which ABS was involved in managing the Premises using the Murray Hill name, with ABS having access to various resources of the Murray Hill organization;
> (e) With respect to the management of the Premises, the ABS Defendants participated in and controlled all of Murray Hill's activities.

Aside from the above enterprise allegation, the only facts pleaded with respect to Murray Hill are that: (1) it is a limited liability company in the business of managing real estate, (2) it provided ABS with office space, stationery, and the right to use the Murray Hill name; (3) Ames contracted with Murray Hill concerning the management of the premises;

and (4) ABS assumed all of the obligations of Murray Hill under that contract.

When the above factual allegations are viewed in the context of the entirety of the complaint it becomes clear that the inclusion of Murray Hill as a constituent of the Murray Hill Enterprise is an attempt to circumvent the distinctness requirement. Indeed, this kind of artful pleading is common:

> Typically, the defendant corporation is alleged to be part of an association in fact enterprise including the corporate employees and agents who have engaged in wrongdoing. Legal entities affiliated with the corporation, such as a subsidiary or holding company, are sometimes thrown into the association in fact stew as well. Finally, there may be outside legal entities, such as an advertising agency or law firm, which are also named as defendants and as part of the association in fact enterprise.

David B. Smith & Terrance G. Reed, Civil RICO ¶ 3.07 at 3-83 (2006). Murray Hill is just the kind of outside legal entity described by Smith and Reed. The only role that Murray Hill played was to lend its name to ABS. ABS assumed all of Murray Hill's obligations vis-à-vis Ames, so that Murray Hill performed no function in the alleged enterprise. The complaint is devoid of any alleged ongoing conduct in the alleged enterprise on Murray Hill's part.

Since Al's Best and Anshelewitz are not properly pleaded as persons liable and Murray Hill is not properly pleaded as part of an enterprise, the RICO person and the enterprise in this case are one and

the same: ABS and its employees. Consequently, plaintiff's substantive RICO claims are dismissed for failure to plead a RICO person liable distinct from the RICO enterprise.

### Count III: Conspiracy to Commit RICO Violations

Count III alleges a RICO conspiracy among ABS, Del Vecchio, Schonfeld, Keegan and contractors, including Al's Best. The substantive RICO offense that serves as the basis for this count is essentially identical to the substantive offenses pleaded in counts I and II. Since plaintiff has failed to state a substantive RICO claim, plaintiff's conspiracy claim also fails.

Count III is dismissed.

### Counts IV - VIII: State Law Claims

Because plaintiff's federal claims are dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Plaintiff's state law claims are dismissed without prejudice.

### **Conclusion**

For the foregoing reasons, defendants' motions are granted. Counts I through III are dismissed. There appears to be no basis for allowing an opportunity to replead. Counts IV through VIII are dismissed without prejudice.

Dated: New York, New York
      March 30, 2007

                                                              SO ORDERED

                                                              */s/ Thomas P. Griesa*

                                                              Thomas P. Griesa
                                                              U.S.D.J.